UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ROBERT I. TOUSSIE,

                            Plaintiff,                        **MEMORANDUM AND ORDER**

                       -against-                                10-CV-2179 (SLT) (RER)

SMITHTOWN BANCORP, INC., BRADLEY E.
ROCK, SR., AND BRADLEY E. ROCK, JR.,

                            Defendants.
-----------------------------------------------------------------x
**TOWNES, United States District Judge:**

        In April 2010, Plaintiff Robert I. Toussie ("Plaintiff") commenced this action in the Supreme Court of the State of New York, Kings County, principally alleging that a bank holding company, Smithtown Bancorp, Inc. ("SBI"), and Bradley E. Rock, Sr. ("Rock") – SBI's President, Chairman of the Board and Chief Executive Officer – defrauded him by knowingly making material false statements in order to induce him to purchase shares in SBI. Although this complaint contained only two state-law claims, Defendants removed this action to this Court, alleging that one or both of these claims necessarily raises a substantial federal issue. Plaintiff, who denies that either his fraud claim against SBI and Rock or his second cause of action – alleging that Rock's son, Bradley E. Rock, Jr., aided and abetted the fraud – necessarily raises substantial federal issues, promptly moved to remand this action to State court.

        This Court referred Plaintiff's motion to Magistrate Judge Reyes ("Judge Reyes") for a report and recommendation ("R&R"). On February 7, 2011, Judge Reyes issued his R&R, recommending that Plaintiff's motion be granted and that this case be remanded. Defendants now object to portions of this R&R. For the reasons stated below, this Court concludes that Defendants' objections are either without merit or are of no moment, and adopts the R&R.

## BACKGROUND

This is one of three civil actions currently pending before this Court in which SBI and one or more of its officers and/or directors is alleged to have deliberately misled investors concerning the financial health of SBI and its subsidiary, Bank of Smithtown (the "Bank"). The first – *Waterford Township Police & Fire Retirement Sys. v. Smithtown Bancorp, Inc.*, E.D.N.Y. Docket No. 10-CV-864 (SLT)(RER) – is a putative class action brought on behalf of those SBI shareholders who purchased common stock between March 13, 2008, and February 1, 2010. Filed in this Court on February 25, 2010, the complaint in *Waterford* alleges that SBI, Rock, and SBI's Executive Vice President and Chief Financial Officer, Anita M. Florek, violated federal securities laws and regulations by approving and/or disseminating false and misleading statements in press releases and certain forms filed with the Securities and Exchange Commission ("SEC"). That complaint alleges that these statements were made in knowing or reckless disregard of the following "adverse facts," among others:

> (a) that [SBI's] financial results were artificially inflated due to SBI's material understatement of its loan loss reserves and SBI's failure to state certain of its assets at their true fair value;
> (b) that [SBI] improperly delayed the recognition of its impaired assets in order to inflate its reported income and asset quality;
> (c) that [SBI's] internal and disclosure controls were materially deficient; [and]
> (d) that [SBI], through its subsidiary [Bank], was engaged in unsafe and/or unsound banking practices . . . .

*Waterford* Complaint at ¶ 54.

The second action pending before this Court – *Yourgal v. Smithtown Bancorp, Inc.*, E.D.N.Y. Docket No. 10-CV-1405 (SLT)(RER) – is also a putative class action, brought on behalf of all persons who purchased SBI securities between March 13, 2008, and February 1,

2010, and particularly those who purchased their securities pursuant to, or traceable to, a May 2009 public offering. Filed in this Court approximately one month after *Waterford* was commenced, the complaint in *Yourgal* is similar to that in *Waterford* except that it (1) adds three federal securities law claims expressly "predicated upon defendants' strict liability for making false and materially misleading statements in the Offering Materials" issued in connection with the May 2009 public offering, *Yourgal* Complaint at ¶¶ 78-87, and (2) names nine defendants in addition to SBI, Rock and Florek: namely, SBI's directors and the underwriter who allegedly "assisted in the preparation and dissemination of the Offering Materials." *Id.* at ¶¶ 21-30. However, the *Yourgal* complaint, like that in *Waterford*, alleges that the defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10(b)(5) by failing to disclose material adverse facts about SBI, including:

> (1) that SBI had materially understated its loan loss reserves; (2) that SBI had failed to state certain of its assets at their fair value; (3) that [SBI] had delayed recognition of impaired assets; (4) that [SBI]'s financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (5) that [SBI] lacked adequate internal and financial controls . . . [and (6)] that [SBI], through its subsidiary, was engaged in unsafe and/or unsound banking practices . . . .

*Id.* at ¶ 10.

### *The Instant Complaint*

In contrast to the two actions described above (the "Class Actions"), this action was commenced in the Supreme Court of the State of New York by an individual, Plaintiff, who alleges that he was "SBI's single largest individual shareholder" in 2009. Complaint at ¶ 17. In his complaint dated April 22, 2010, Plaintiff alleges that in purchasing his securities – which

3

included private placements, *id.* at ¶ 13 – he relied, in part, on statements made by Rock in the course of their numerous conversations. The complaint states:

> Plaintiff spoke to Rock on approximately three dozen occasions in 2008 and 2009. During these conversations, Rock made a variety of factual representations that were calculated to, and did, induce Plaintiff to purchase SBI stock. For example, prior to Plaintiff's September 2008 purchase of more than 101,000 SBI shares in a public offering, Rock told Plaintiff that SBI stock was "a steal at $14," that the stock was undervalued, and that he would purchase more SBI stock himself if he were permitted to.
>
> Rock also told Plaintiff that the Bank had only two "bad loans," that all of its other loans were healthy, that the Bank was the "best bank in the country," that the Bank was "exceptionally sound," and that SBI and the Bank were "not suffering from the effects of weak real estate markets in any significant way."
>
> This deceptive posturing continued well into 2009 as Rock continued to state that the Bank had only a "tiny number of bad loans," that the Bank was very well-capitalized, that the Bank's loan loss reserves were reasonable and appropriate, that the Bank was in "exceptional financial health," that the Bank was "exceptionally sound and extremely safe," and that SBI and the Bank were not experiencing significant negative effects from the national economic downturn or from distressed real estate markets.

Complaint at ¶¶ 18-20. Plaintiff specifically alleges that he relied on these statements, stating that had "Rock not made such statements, Plaintiff would not have purchased SBI shares." *Id.* at ¶ 21.

According to Plaintiff's complaint, Rock knew these statement were untrue when he made them. Plaintiff alleges that, shortly before filing his complaint, he obtained the "cooperation of a senior bank executive who wishes to remain anonymous at this time (the 'Informant')" and who revealed "Defendants' plot to defraud both investors and federal regulators." *Id.* at ¶ 4. Plaintiff alleges that, through the Informant, he learned that

4

> Defendants' chicanery involved, among other things, pressuring [real estate] appraisers to withhold bad news about the Bank's deteriorating loan portfolio until after the end of the financial reporting quarter, loaning defaulting borrowers more money so that they could make interest payments on existing distressed loans (including to borrowers that had abandoned the property), and telling the investing public that all was well even as the Bank's regulators were demanding massive changes to the Bank's risk management and lending policies to address the Bank's flagrant violation of applicable laws and regulations designed to foster the financial stability of federally insured banking institutions.

*Id.* at ¶ 5.

Plaintiff's complaint quotes extensively from the same SEC filings and public statements which are the subject of the Class Actions and alleges that "SBI's 2008 and 2009 public financial statements were materially false and misleading in that they, among other things, materially understated loan losses, overstated assets, and overstated earning." *Id.* at ¶ 39. However, Plaintiff's complaint does not specifically claim that these statements violated federal securities law. Rather, the complaint alleges only two state-law causes of action. First, the complaint alleges that SBI and Rock defrauded Plaintiff by knowingly making material misrepresentations and/or knowingly failing to state facts required to make the facts disclosed not misleading. *Id.* at ¶¶ 82-83. Second, the complaint alleges that Rock's son – a recent college graduate with little or no relevant experience who was, nonetheless, entrusted to "make decisions and recommendations accounting for a large portion of the Bank's new loans in 2008 and 2009," *id.* at ¶ 30 – aided and abetted the fraud by

> providing borrowers with "interest reserve advances" to foster the illusion that delinquent and distressed borrowers were timely paying their debts to the Bank, knowingly utilizing fraudulent and inflated appraisals in connection with the loan approval process, knowingly engaging in a pattern of reckless loan approvals in order to meet the

5

> loan growth imperatives of Bank management, and conferring with
> Rock regarding lending decisions in such a manner as to circumvent
> and subvert the Bank's loan committee process.

*Id.* at ¶ 87.

Although Plaintiff's complaint does not allege any federal causes of action, defendants removed Plaintiff's action to this Court in May 2010, asserting that Plaintiff's complaint contained "a state-law claim that necessarily raises substantial and disputed federal issues that are best resolved in a federal forum." Defendants' Notice of Removal ("Defendants' Notice") at ¶ 15. In this connection, Defendants noted that Plaintiff's complaint alleges, *inter alia*, that "Defendants improperly failed to disclose certain adverse conclusions reached by the Federal Deposit Insurance Corporation ('FDIC') in its annual examination of [SBI] as of June 30, 2009, and the resulting Report of Examination ('ROE') that documented the FDIC's conclusions." *Id.* at ¶ 9 (citing Plaintiff's Complaint at ¶¶ 41-45). Alluding to that portion of Plaintiff's complaint which faulted Defendants for failing to "disclose the FDIC's conclusions to SBI's investors or to the public at large," Complaint at ¶ 45, Defendants argue that federal law not only prohibited disclosure of the conclusions of the ROE, but prescribed criminal penalties for the improper disclosure of examination findings. Defendants' Notice at ¶¶ 11-12. In addition, Defendants assert that "it appears that Plaintiff intends to rely on the FDIC's examination findings to support his claim that [SBI's] true financial condition was contrary to its public disclosures." *Id.* at ¶ 14.

## *Plaintiff's Motion to Remand*

Within 30 days after Defendants filed their Notice of Removal, Plaintiff moved to remand this action to State court. Plaintiff characterized Defendants' removal as premised on "their plan to argue that *one* factual allegation made in *a single sentence* of a 49-page complaint is

6

'contradicted by . . . federal law and regulations.'" Plaintiff's Memorandum in Support of his Motion to Remand ("Plaintiff's Memo") at 1 (quoting Defendants' Notice at ¶ 11) (italics in Plaintiff's Memo). Plaintiff principally argued that his claims did not rely on the federal regulations which precluded dissemination of the ROE, and that these regulations constituted, at most, a defense to a portion of Plaintiff's claims. Plaintiff also argued that even if Plaintiff's claims raised a federal question regarding the FDIC regulations, this federal question was "neither disputed nor substantial." Plaintiff's Memo at 2.

This Court referred Plaintiff's motion for remand to Judge Reyes who, on February 7, 2011, issued an R&R recommending that this action be remanded. Judge Reyes noted that "[r]emoval on the basis of federal question jurisdiction is improper unless a federal question appears on the face of a well-pleaded complaint," R&R at 3 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-93 (1987)), and that a plaintiff could "avoid federal jurisdiction by 'pleading only state law claims even where a federal claim is also available.'" R&R at 4 (quoting *Romano v. Kazacos*, 609 F.3d 512, 518 (2d Cir. 2010)). Since Plaintiff's complaint alleged only state-law claims, Judge Reyes held that federal jurisdiction would exist only where one or both of these claims "necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal . . . and state judicial responsibilities." *Id.* at 4 (*quoting Grable & Sons Metal Prods v. Darue Engineering & Mfg.*, 545 U.S. 308, 313 (2005)) (ellipses added). However, Judge Reyes held that Plaintiff's state-law claims did not necessarily raise a federal issue.

In order to establish this point, Judge Reyes noted that Plaintiff's fraud claims could be assessed entirely under New York law. The R&R states:

7

> The central issue in this case is whether Defendants misrepresented
> the financial condition of the Bank. A determination of whether
> Defendants committed fraud does not necessarily implicate federal
> law as Plaintiff's claims may be assessed entirely by applying New
> York law. Pursuant to New York law, Defendants were required to
> maintain adequate levels of capitalization and appropriate loan loss
> reserves. *See, e.g.*, 3 NY ADC 6.7; 3 NY ADC 29.2. Further,
> Defendants were obligated to accurately represent the financial
> condition of the Bank under common law fraud principles . . . .
> Plaintiff, therefore, is not required to establish that Defendants
> violated federal law in order to prove his case.

*Id.* at 6. The R&R distinguished three cases cited by Defendants – *Grable*; *Broder v. Cablevision Sys Corp.*, 418 F.3d 187 (2d Cir. 2005); and *D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93 (2d Cir. 2001) – opining that in these cases, "the Court was required to determine whether a federal law was violated, which in turn required the Court to interpret and apply the federal law at issue." *Id.* at 7.

The R&R also held that the fact that the Class Actions involved some of the same issues raised in this case did not provide a basis for federal subject-matter jurisdiction. The R&R stated:

> Defendants note that "this case and the Class Actions concern the
> same issues, with one pleading federal securities claim[s] and the
> other characterizing the case under state law." Defs' Memo at 6. It
> is irrelevant that Plaintiff's claim asserts the same factual
> allegations as federal securities claims brought by different
> plaintiffs in different actions. While it is true that Plaintiff could
> have brought an action under the Securities Exchange Act, it does
> not mean that Plaintiff was obligated to base his claim upon it.

*Id.* at 8.

Finally, the R&R addressed the bases for removal set forth in Defendants' Notice, and concluded that any issues relating to the FDIC examinations would be introduced by Defendants as defenses. The R&R took issue with Defendants' claim that Plaintiff's complaint alleged that

8

the contents of the FDIC examination should have been disclosed in contradiction of federal laws prohibiting disclosure, asserting that Plaintiff was relying on the FDIC examination "only insofar as it establishes that Defendants knowingly made false statements." *Id.* at 9. The R&R then noted that it was Defendants, not Plaintiff, who would need to adduce proof regarding the nature, accuracy, reliability and purpose of FDIC examinations, saying:

> Defendants argue . . . this Court must consider federal laws concerning the significance of FDIC examinations in order to determine how much weight, if any, should be accorded to the examination findings. . . . This argument is more properly raised as a defense against Plaintiff's allegation that Defendants had the requisite scienter, *i.e.*, Defendants knew their statements were false at the time they were made. As discussed above, Defendants were required by New York law to accurately represent the Bank's financial condition. The FDIC examination arguably supports Plaintiff's common law fraud claim in that it may be probative of Defendants' scienter. The unreliability or inaccuracy of the FDIC examination is Defendants' argument as to why the FDIC examination is not sufficient evidence of fraud. Thus, federal laws concerning the nature and purpose of FDIC examinations become relevant only by way of a defense to an obligation created entirely by state law.

*Id.*

Defendants have timely objected to the R&R on four grounds. First, Defendants argue that the R&R erroneously concludes that Plaintiff can prove his claims based entirely on State law. Second, Defendants contend that the R&R incorrectly holds that there can be no federal jurisdiction as a matter of law if Plaintiff possibly can prove his claim relying solely on State law, and assert that Judge Reyes was incorrect in finding that the federal issues identified by Defendants were "theories that could support" Plaintiff's state law claims, rather than logically separate claims. Third, Defendants assert that the R&R is contradictory in that it characterizes

9

the federal issues identified by Defendants as mere defenses, then states that Plaintiff has indicated that he intends to rely on the examination performed by the FDIC to show falsity and scienter. Fourth, Defendants state that Judge Reyes misapprehended their reason for noting that the Class Actions, involving issues similar to those in this case, were still pending.

## *DISCUSSION*

### *Standard of Review*

In reviewing Defendants' objections, this Court applies the standard of review set forth in 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(3) of the Federal Rules of Civil Procedure. Under both of these provisions, a district court must "make a de novo determination of those portions of the report or . . . recommendations to which objection is made." 28 U.S.C. § 636(b) (1)(C); *see* Fed. R. Civ. P. 72(b)(3). Upon de novo review, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 363(b)(1)(C). "The Judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

### *Legal Principles governing Removal*

Although the parties largely agree on the law relating to this case, it is useful to review the legal principles governing removal before addressing the specifics of Defendants' objections. Removal is authorized by 28 U.S.C. § 1441(a) which provides, in pertinent part, that, "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the . . . defendants . . . ." Since one or more of the Defendants is a citizen of the same state as Plaintiff, Defendants can remove this action only if this Court has federal-question jurisdiction

over it pursuant to 28 U.S.C. § 1331. This section provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). However, an "'independent corollary' to the well-pleaded complaint rule" – the "artful pleading doctrine" – provides that "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 22 (1983)). "If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint." *Id.* Thus, although "federal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law," *Grable*, 545 U.S. at 312, federal-question jurisdiction also exists where "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 308.

This latter category of federal-question jurisdiction has been variously described by the Supreme Court as "special and small" and "slim." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699, 701 (2006). The Supreme Court has long "confined federal-question jurisdiction over state-law claims to those that 'really and substantially involv[e] a

dispute or controversy respecting the validity, construction or effect of [federal] law.'" *Grable*, 545 U.S. at 313 (quoting *Shulthis v. McDougal*, 225 U.S. 561, 569 (1912)) (brackets in *Grable*). Indeed, the Supreme Court has noted that "[i]t has . . . become a constant refrain in such cases that federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.*

In determining whether subject-matter jurisdiction exists, federal courts examine the well-pleaded allegations in the complaint. *See Sullivan v. Amer. Airlines, Inc.*, 424 F.3d 267, 271 (2d Cir. 2005). "[A]llegations that a well-pleaded complaint would not include – e.g., allegations about anticipated defenses" – are disregarded. *Id.* A court must then ascertain which portions of the plaintiff's complaint comprise distinct claims. *Broder*, 418 F.3d at 194. As the Second Circuit explained in *Broder*:

> A single claim over which federal-question jurisdiction exists is sufficient to allow removal. . . . Where a federal issue is present as only one of multiple theories that could support a particular claim, however, this is insufficient to create federal jurisdiction.

*Id.*

Although this Court recognizes that "what a plaintiff presents as one 'count' may be understood to encompass more than one 'claim,'" *id.*, this Court is satisfied that Plaintiff's complaint in this case contains only a single state-law claim against each defendant. The complaint alleges that SBI and Rock defrauded Plaintiff by making a number of statements which they knew to be false for the purpose of inducing Plaintiff to purchase SBI securities. Some of the statements were contained in SEC forms which SBI filed in accordance with federal

regulations, but technical issues relating to these forms are not central to this action. The statements in the SEC filings were exemplary of the many allegedly false statements made by Rock, both in his conversations with Plaintiff and in other public statements, at the same time SBI was concealing the Bank's serious financial problems occasioned, in part, by the reckless lending decisions of Rock's inexperienced son. The son's alleged efforts to conceal these losses by, *inter alia*, providing delinquent borrowers with "interest reserve advances" to foster the illusion that these borrowers were timely repaying their loans is the basis for the second cause of action, which alleged that the son aided and abetted the fraud.

## *Defendants' Objections*

In light of the foregoing, this Court rejects Defendants' first objection: that the R&R erroneously concluded that Plaintiff could prove his claims relying solely on New York law. "Proof of fraud under New York law requires a showing that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415-16 (2d Cir. 2006) (internal quotations and citations omitted). "To state a claim for aiding and abetting fraud under New York law, a plaintiff must show 1) the existence of a fraudulent scheme, 2) that the defendant had actual knowledge of the fraud, and 3) that the defendant provided substantial assistance to the fraudulent scheme." *Rossner v. Bank of China*, 349 Fed. Appx. 637, 638 (2d. Cir. 2009) (summary order) (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir.2006)). Plaintiff could make out all of the elements of both claims through his own testimony and either the testimony of the Informant or documentation provided by him. Although Plaintiff could

doubtless rely on alternative theories which would require him to prove the falsity of portions of SEC filings, he need not rely on these theories to prove the fraud.

In making this very point in his R&R, however, Judge Reyes included an unnecessary reference to New York regulations. The R&R stated:

> The central issue in this case is whether Defendants misrepresented the financial condition of the Bank. A determination of whether Defendants committed fraud does not necessarily implicate federal law as Plaintiff's claims may be assessed entirely by applying New York law. *Pursuant to New York law, Defendants were required to maintain adequate levels of capitalization and appropriate loan loss reserves. See, e.g., 3 NY ADC 6.7; 3 NY ADC 29.2.* Further, Defendants were obligated to accurately represent the financial condition of the Bank under common law fraud principles . . . . Plaintiff, therefore, is not required to establish that Defendants violated federal law in order to prove his case.

R&R at 6 (emphasis added). Defendants seize upon the sentence italicized above in arguing (1) that the New York banking regulations are not mentioned in the complaint and (2) that the regulations cited in the R&R "have nothing whatsoever to do with the allegations in the Complaint." Defendants' Objections at 7. Even assuming that Defendants are correct in both respect, however, this would not undercut the main point of the above-quoted paragraph: that the two causes of action raised in the complaint could be proved without reference to federal law.

In arguing the contrary, Defendants appear to conflate the central issue in this case with the central issue in the Class Actions. As discussed above, *see* pp. 2-3, *ante*, the Class Actions focus on the accuracy of SBI's SEC filings, principally alleging that SBI materially understated its loan loss reserves, failed to state certain of its assets at their fair value, and delayed recognition of impaired assets. This case, in contrast, focuses on false statements relating to the financial health of SBI and the Bank, and the unsound business and accounting practices

allegedly undertaken by Rock and others to disguise the Bank's true condition. The statements in the SEC filings are only some of the many statements alleged to be false, and the truth and falsity of even these statements should not turn on the technical manner in which loan losses and capital ratios were calculated. Rather, Plaintiff's theory appears to be that Defendants manipulated the very data on which the loan losses and capital ratios were calculated by, *inter alia*, engaging in the unsound business and accounting practices.

This Court also rejects Defendants' second objection, which argues (1) that the R&R incorrectly holds that there can be no federal jurisdiction as a matter of law if Plaintiff possibly can prove his claim relying solely on State law, and (2) that Judge Reyes was incorrect in finding that the federal issues identified by Defendants were "theories that could support" Plaintiff's State law claims, rather than logically separate claims. First, this Court does not read the R&R as holding that subject-matter jurisdiction does not exist simply because Plaintiff could prove his case based on State law. Rather, the R&R holds that the federal questions identified by Defendants are neither necessary to the determination of Plaintiff's state-law claims nor substantial enough to create federal jurisdiction. For the reasons set forth in the discussion of Defendants' first objection, this Court agrees with this assessment.

Second, this Court finds that Plaintiff's complaint does not contain a "logically separate claim" relating to violations of federal laws or regulations. As noted above, Plaintiff claims only that Defendants engaged in, or aided and abetted, fraud by making material false statements and engaging in unsound business and accounting practices to conceal the truth. Because of the highly regulated nature of the banking industry, some of the allegedly false statements were made in SEC filings and some of the unsound practices were uncovered by FDIC examiners.

15

However, these facts alone do not give rise to "logically separate claims" involving technical federal regulatory issues, but provide alternative theories for proving the fraud claims. Furthermore, any federal questions arising in connection with these SEC filings and FDIC examinations are insubstantial and not – as Defendants' claim – the "central focus of this entire action." Defendants' Objections at 10.

Defendants' third objection alleges that there is a contradiction in the R&R. First, the R&R "finds that Defendants' arguments [concerning the FDIC examination] are actually defenses to Plaintiff's claims," R&R at 8, then concludes that "Plaintiff relies on the FDIC examination . . . insofar as it establishes that Defendants knowingly made false statements." *Id.* at 9. While this Court understands how these statements would appear to be contradictory, this Court interprets this portion of the R&R as attempting to address the two distinct grounds for removal set forth in Defendants' Notice. The R&R concludes that both grounds are actually defenses to Plaintiff's fraud claims and, therefore, cannot serve as a basis for subject-matter jurisdiction. This Court concurs.

Defendants' first ground for removal is predicated on the fact that Plaintiff's complaint alleges that "Defendants improperly failed to disclose certain adverse conclusions reached by the Federal Deposit Insurance Corporation ('FDIC') in its annual examination of [SBI] as of June 30, 2009, and the resulting Report of Examination ('ROE') that documented the FDIC's conclusions." Defendants' Notice at ¶ 9 (citing Plaintiff's Complaint at ¶¶ 41-45). Defendants argue that federal law not only prohibited disclosure of the conclusions of the ROE, but prescribed criminal penalties for the improper disclosure of examination findings. *Id.* at ¶¶ 11-12. This argument implies that this Court will necessarily have to resolve federal issues to determine whether Defendants' failure to disclose the FDIC's adverse conclusions was improper.

16

Although the R&R asserts that "Plaintiff does not claim that the contents of the FDIC examinations should have been disclosed," R&R at 9, this Court notes that Plaintiff's complaint does, in fact, fault Defendants for failing to "disclose the FDIC's conclusions to SBI's investors or to the public at large." Complaint at ¶ 45. This allegation in the complaint could fairly be interpreted as identifying this failure to disclose as among the many misleading statements or omissions that form the factual basis for Plaintiff's fraud claims. However, even if this allegation were interpreted in this manner, Defendants' argument that federal law prohibited them from disclosing the results of the examination would be a defense to this allegation of fraud.

Defendants' second ground for removal rests on the assumption – subsequently confirmed by Plaintiff in his motion papers – that "Plaintiff intends to rely on the FDIC's examination findings to support his claim that [SBI's] true financial condition was contrary to its public disclosures." Defendants' Notice at ¶ 14. Defendants state that "Plaintiff's reliance on the FDIC's examination . . . raises . . . issues regarding the nature, accuracy, reliability and purpose of FDIC examinations," *id.*, and imply that these issues can give rise to subject-matter jurisdiction.

In his R&R, Judge Reyes points out that it is Defendants, not Plaintiff, who would need to adduce proof regarding the nature, accuracy, reliability and purpose of FDIC examinations. As Judge Reyes notes, in order to establish falsity and scienter Plaintiff would need only to introduce the results of the FDIC's examination that contradicted Rock's rosy assessments. Defendants would then need to establish that the examination was inaccurate or unreliable to establish that the FDIC's conclusions did not place them on notice that the rosy assessments were false.

Defendants' fourth and final objection alleges that Judge Reyes misapprehended Defendants' reason for noting that the Class Actions, involving issues similar to those in this case, were still pending. The R&R stated:

> Defendants note that "this case and the Class Actions concern the same issues, with one pleading federal securities claim[s] and the other characterizing the case under state law." Defs' Memo at 6. It is irrelevant that Plaintiff's claim asserts the same factual allegations as federal securities claims brought by different plaintiffs in different actions. While it is true that Plaintiff could have brought an action under the Securities Exchange Act, it does not mean that Plaintiff was obligated to base his claim upon it.

R&R at 8 (bracketed material added). Defendants claim that the R&R misconstrues their position, and that they meant only to "argue that the existence of the two virtually identical class actions is an important factor going to . . . whether the exercise of jurisdiction in a particular case risks upsetting any Congressionally-approved division of labor between state and federal courts." Defendants' Objections at 15-16.

The fact that the R&R may have misconstrued Defendants argument, however, does not undermine Judge Reyes' conclusion that Defendants did not establish federal question jurisdiction. As previously noted at p. 11, *Grable* held that federal jurisdiction exists where "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 308. Since Judge Reyes had already correctly concluded that Plaintiff's State law claims did not necessarily raise any substantial federal issue, he did not need to reach the question of whether this Court's exercise of jurisdiction would disturb any congressionally approved balance of federal and state judicial responsibilities.

## *CONCLUSION*

For the reasons stated above, this Court finds that Defendants' objections are either without merit or are of no moment. Accordingly, this Court adopts Magistrate Judge Reyes's Report and Recommendation dated February 7, 2011, and grants Plaintiff's motion to remand this matter to the Supreme Court of the State of New York, Kings County.

**SO ORDERED.**

/ SANDRA L. TOWNES
United States District Judge

Dated: March 24, 2011
Brooklyn, New York